UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOANNA J. RAMIREZ,<br><br>                Plaintiff,<br>     v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>                Defendant. | CIV NO 06-05442   PVT<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINTIFF'S MOTION FOR REMAND AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 14 and 19)** |

**I.   INTRODUCTION**

In this Social Security case, Plaintiff, Joanna J. Ramirez ("Plaintiff") brings an action pursuant to 42 U.S.C. § 405(g) appealing a final decision by the Commissioner of Social Security which denied her claims for disability insurance under Title II of the Social Security Act (42 U.S.C. § 400 et seq.) for the time period beginning in September 2003. Presently before the Court are cross-motions for summary judgment brought by Plaintiff and Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Defendant").[1] For the reasons set forth below, the Court Denies Plaintiff's Motion for Summary Judgment and Grants Plaintiff's Motion for Remand.

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

## II. LEGAL STANDARDS

### A. Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). When determining whether substantial evidence exists to support the ALJ's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

Finally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Remand is the appropriate remedy where additional administrative proceedings could remedy defects. *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985). If, however, a rehearing would simply delay payment of benefits, reversal is appropriate. *Id.*

### B. Standard for Determining Disability

The Social Security Act provides benefits to qualified individuals who are disabled. 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). An impairment for purposes of this definition "results from anatomical, physiological, or psychological abnormalities which are demonstrable

by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In addition, a person is disabled only if the impairment is so severe as to preclude not only performance of his previous work, but also, considering his age, education and work experience, performance of any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). The claimant carries the burden of proving disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as amended* April 9, 1996. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled, and the claim is denied. *Id.* If the claimant is not engaged in such activity, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments; if not, the claim is denied. *Id.* If the claimant has a severe impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability benefits are automatically awarded. *Id.* If the impairment is not one presumed to be disabling, the fourth step requires the Commissioner to determine whether the claimant has sufficient Residual Functional Capacity ("RFC") to perform his past relevant work; if so, the claim is denied. *Id.* The claimant has the burden of proving that he or she is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. *Id.* In step five, the burden shifts to the Commissioner to prove that the claimant, based upon his age, education, work experience, and RFC, can perform other substantial gainful work. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

To disregard the uncontradicted opinion of a treating physician, an ALJ must provide clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). If a treating physician's opinion is contradicted by a non-treating doctor, the treating physician's opinion may be rejected only for "specific and legitimate reasons" supported by substantial

evidence in the record. *Id.*

Similarly, when a claimant has "produced medical evidence of underlying impairments consistent with his complaints and there is no affirmative evidence that he is malingering, the ALJ's reasons for rejecting [the claimant's] testimony must be clear and convincing." *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). Additionally, the ALJ must articulate specific reasons for rejecting the claimant's subjective testimony regarding his pain and limitations. *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001). An ALJ may not reject a claimant's statements regarding his limitations merely because they are not supported by objective evidence. *Id.* at 1147; *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.1991). In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

## III.  DISCUSSION

### A.  The ALJ's Findings

At step one, the ALJ found that Plaintiff had not performed disqualifying work since the alleged onset of disability (Tr. 35 [finding # 2]). At step two, the ALJ found that Plaintiff's one severe impairment was lupus (Tr. 35 [finding # 3]). At step three, the ALJ determined that the lupus did not meet or medically equal the criteria of any impairment presumed to establish disability (Tr. 35 [finding # 4]). In the findings on residual functional capacity ("RFC"), the ALJ found that Plaintiff's statements about pain and limitations were "**not** totally credible" (Tr. 35 [finding #5]) (emphasis in original); and the ALJ found that Plaintiff could perform sedentary work with certain restrictions. (Tr. 35-36 [finding #6]).[2] At the fourth step, the ALJ found that Plaintiff could have performed three of her past jobs (Tr. 36 [findings #7, 8]).

---

[2] "The claimant has the residual functional capacity to perform 'sedentary' work activity, standing and walking up to 2 hours cumulatively and sitting up to 6 hours in an 8 hour workday, and lifting and carrying up to 10 lbs. consistently. The claimant should only occasionally be required to twist, stoop, or crouch, and should avoid exposure to temperature and humidity extremes and such irritants as fumes, odors, cigarettes, and chemicals." (Tr. 35-36)

Plaintiff takes issue with the ALJ's RFC determination for the following reasons: 1) it was based on the ALJ's improper finding that the lupus did not "equal" listing 14.02 because it was not supported by substantial evidence; 2) the ALJ improperly rejected the opinions of her treating physician; 3) the ALJ improperly discounted the Plaintiff's symptom-reporting; 4) the findings on Plaintiff's RFC were not supported nor properly reached; and 5) the step four findings that she could perform in her past jobs were not supported or properly reached.

         1.     <u>ALJ's Finding Lupus Not Being "Equal" to 14.02 Supported by Substantial Evidence</u>

Plaintiff claims that the ALJ erred by finding at step three that listing 14.02 was not "equaled." Plaintiff also argues that the ALJ's finding was not supported by substantial evidence and improperly disregarded evidence of equivalency. Although Plaintiff's lupus is considered a "severe" impairment (Tr. 35 [finding #3]) it does not "meet or medically equal" any of the listed impairments (Tr. 35 [finding #4]). In order to meet or "equal" the listings, Plaintiff must establish that the "symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) *citing* 20 C.F.R. § 404.1526.

In order to satisfy the listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1, an individual must have "significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise and weight loss." Also, a moderate level of severity is required involving one of the following systems: (1) joint involvement, (2) muscle involvement, (3) ocular involvement, (4) respiratory involvement, (5) cardiovascular involvement, (6) digestive involvement, (7) renal involvement, (8) hematologic involvement, (9) skin involvement, (10) neurological involvement, or (11) mental involvement. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.02B (2006). Plaintiff's lupus did not equal any of the listings in section 14.02. Medical expert David A. West, M.D. testified that "[Plaintiff] has a mild involvement - - trivial mild involvement of nearly a half of different organ systems [listed]. Maybe a moderate involvement of the joints, but not for sure" (Tr. 533). Additionally, Dr. West did not believe that Plaintiff met the weight loss requirement and also noted that her alleged fever was not

documented (Tr. 533).

According to the standard set out in *Tackett*, Plaintiff's above symptoms did not match the severity required in the listings.  Additionally, the fact that Plaintiff did not suffer weight loss and the fact that Dr. West also noted that Plaintiff's alleged fever was not documented speaks to Plaintiff's failure to satisfy the threshold requirements of section 14.02B.  Plaintiff argued that her level of severity was "very close" to meeting the requirements of the listings.  Plaintiff even states in her motion that "[t]his statement was positive evidence of the impairment having equaled the listing, but the ALJ did not even acknowledge that evidence of equaling."  A symptom being "very close" is not equivalent to one that "equals" a listing.  Plaintiff failed to establish sufficient findings through her symptoms to "equal" any listing in 14.02B.

        2.      <u>ALJ Properly Rejected Opinion of Plaintiff's Treating Physician</u>

Plaintiff claims the ALJ improperly rejected the opinion of her treating physician, Thomas Bush, M.D.  The opinion of Dr. Bush was contradicted by the opinion of Dr. West, the consultative examiner.  Dr. Bush opined that Plaintiff would miss approximately four days of work per month (Tr. 433) and that her symptoms would often interfere with attention and concentration (Tr. 430).  In contrast, Dr. West opined that the Plaintiff "has only 'mild' joint involvement, 'mild' venous insufficiency, and 'mild' Raynaud's and ITP, her migraines have received no aggressive treatment, and her depression has received no durational treatment at all, her lupus would **not** meet or equal in severity the provisions of 14.02(b)."[3] (Tr. 32) (emphasis in original).

Because the treating physician was contradicted by the examining physician, Dr. West, the ALJ was only required to provide specific and legitimate reasons for rejecting the opinions. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1996).  An ALJ may reject a treating opinion which is conclusory and unsupported by the record as a whole or by objective medical findings.

---

[3] There appears to be an inaccurate report by the ALJ on the board specialist's findings regarding the Plaintiff's migraines. In fact, Dr. West testifies that her migraines were treated "terribly aggressively" (Tr. 533). Under Ninth Circuit precedent, however, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). In light of Plaintiff's failure to meet the threshold requirements of section 14.02B, the ALJ's error in misreporting Plaintiff's treatment for migraines is harmless. The ALJ's decision should not be reversed for this inaccuracy.

*Batson v. Commissioner of the Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ specifically found that Dr. Bush's opinion should be rejected because treatment notes made after the Plaintiff's onset date showed that her symptoms had resolved overall and her lupus was stable (Tr. 33). Plaintiff argues the ALJ erroneously based his conclusion on a single occasion where the joint pain was unremarkable. This, however, was not the case. Rather, the ALJ's conclusion was based on the fact that on April 30, 2004, Plaintiff's joints and lower extremities were "'unremarkable,' and her thrombocytopenia, 'resolved'" (Tr. 33) as well as the finding in treatment notes from September 20, 2004 that her lupus, APS and Raynaud's were all found stable. Dr. Bush opined that the Plaintiff would be able to perform "sedentary" jobs, "lifting and carrying up to 10 lbs. occasionally, sitting for 1 hour at a time, up to 6 hours standing and walking cumulatively for 2 hours in an 8 hour workday no more than occasionally twisting, stooping, and crouching and with reasonable preclusion from environmental irritants" (Tr. 33). Dr. Bush opined that the onset date of these limitations was approximately April 2004.

Furthermore, the ALJ found that Plaintiff did not meet the durational requirement for disability since Dr. Bush reported that her symptoms had been "resolved" before a "durational period considerably less than 12 months" (Tr. 33). Dr. Bush also reported that she would be "capable of low stress jobs" (Tr. 430). Plaintiff's own treating physician did not entirely preclude employment and therefore, she should not be considered disabled for the purposes of employment. Dr. Bush does report that Plaintiff's symptoms would cause her to miss about four workdays per month, however, the ALJ rejected this report based on the treatment notes from April 30, 2004 and September 20, 2004, which contradicted Dr. Bush's opinion by reporting that Plaintiff's joints and lower extremities were "unremarkable," her thrombocytopenia "resolved" and her lupus, APS and Raynaud's were "stable" (Tr. 33).

Additionally, Dr. Weiss' psychological testing contradicted Dr. Bush's concentration limitations. Dr. Weiss found that Plaintiff was able to "understand, remember and carry out simple, detailed and complex instructions without special or additional supervision. [Plaintiff] was able to maintain concentration, persistence, and pace for the duration of the evaluation" (Tr.

240).  Also, Dr. Madireddi, a board certified orthopedist, stated that she believed Plaintiff could work in a light-work capacity (Tr. 229).  In light of the foregoing medical opinions, the ALJ properly gave Dr. Bush's opinion minimal weight based on the specific, legitimate reasons given by Dr. West, Dr. Weiss, Dr. Madireddi as well as Dr. Bush's own treatment notes.

### 3. ALJ Did Not Provide Clear and Convincing Reasons to Reject Claimant's Subjective Pain Testimony

Plaintiff argues that the ALJ improperly discounted Plaintiff's reports of her symptoms.  Plaintiff testified (Tr. 498-518, 520-528) that she suffered from pain, fatigue, migraines, numbness, depression (Tr. 524-525), medication side-effects (Tr. 511-512) and activity limitations (Tr. 517).  Plaintiff asserts that the ALJ made a limited acknowledgment of Plaintiff's testimonial statements (Tr. 33-34) and that the acknowledgment made did not indicate "clear and convincing" reasons for the ALJ's rejection of her subjective pain testimony.  The ALJ found that Plaintiff's testimony was "not totally credible" (Tr. 35) but made no further specifications as to the reasons for this conclusion aside from pointing back to the acknowledgments made in the body of the decision (Tr. 35 [finding #5]).  The ALJ compared Plaintiff's testimony to the "record as a whole" (Tr. 34) and in this manner, found Plaintiff's contentions to be "less than fully credible" (Tr. 34).

The ALJ is permitted to use "ordinary techniques of credibility evaluation" such as considering Plaintiff's reputation for truthfulness and inconsistencies in her testimony.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  The ALJ, however, must specify the testimony that is not credible and the evidence that undermines it.  General findings are insufficient.  *Id.*  In *Burch*, the ALJ articulated daily living activities, objective medical findings, and lack of consistent treatment as reasons for denying benefits.  In this case, the ALJ arrived at a conclusory opinion after generally comparing the Plaintiff's complaints to the entire record.  The ALJ's two-sentence, cursory explanation of why Plaintiff's subjective pain testimony should be disregarded does not amount to "clear and convincing" reasoning.

### 4. ALJ Properly Found Capacity for Sedentary Work

The ALJ properly determined that Plaintiff could perform at least sedentary work.  This

1 is supported by the findings of Dr. Madireddi, Dr. Weiss and also, the testimony of Dr. West (Tr.
2 228-229, 238-240, 534). Additionally, Dr. Bush had indicated that the limitations he set forth in
3 his opinion only applied as of April 2004 and by the end of this same month, these limitations as
4 he noted, appeared to have been "resolved" (Tr. 33). Dr. Bush also noted in his RFC report that
5 the Plaintiff could tolerate "low stress jobs" (Tr. 430).

6 Plaintiff also argues that the ALJ failed to consider her mental impairments because she
7 had not properly pursued any treatment. Plaintiff argues that according to *Nguyen v. Chater*, 100
8 F.3d 1462, this kind of reasoning "is to be disfavored because of the high incidence of untreated
9 mental impairments" (Plaintiff's Motion, p. 16). This is an incorrect interpretation of *Nguyen*,
10 which actually states that "the fact that claimant may be one of millions of people who did not
11 seek treatment for a mental disorder until late in the day is not a substantial basis." *Id.* In
12 *Nguyen,* the claimant did in fact seek treatment, but just did so later than he should have. In
13 contrast, in this case, Plaintiff did not pursue any treatment whatsoever. As stated in Social
14 Security Ruling 96-7p, an individual's statements may be less credible when the level or
15 frequency of treatment is inconsistent with the level of complaints. There must be medical signs
16 and laboratory findings of the physical or mental impairment(s) that could reasonably be
17 expected to produce the symptoms. Due to Plaintiff's failure to seek proper mental treatment, it
18 was proper for the ALJ to determine that Plaintiff's mental impairments were "non-severe." (Tr.
19 30).

20 Plaintiff also argues that the ALJ failed to consider the limiting side-effects of her
21 medication. Plaintiff argues that the side-effects of her medication would limit her functioning
22 on a job and should have been considered. On the RFC questionnaire, Dr. Bush reported that
23 Coumadin would have side-effects that could affect Plaintiff's functioning at work, but did not
24 specify any way that the side-effects of Coumadin could limit Plaintiff's functioning.
25 Accordingly, there was no evidence for the ALJ to consider.

26         5.    <u>Findings as to Plaintiff's Ability to Perform Past Work</u>

27 If Plaintiff is able to perform her past work, then she is not disabled. According to the
28 RFC report by Dr. Bush, Plaintiff is limited to occasional twisting, stooping and crouching (Tr.

432). Among the past jobs that Plaintiff has had in the last fifteen years is that of engineering technician and administrative assistant, both of which are office desk jobs. Neither of these jobs required more than occasional twisting, stooping and crouching. Plaintiff has not shown that any of the restricted movements were required in either of the past jobs mentioned above. Therefore, the ALJ properly found Plaintiff has the capacity to perform sedentary work such as the type she performed in her past work.

## IV.  CONCLUSION

For the Foregoing reasons, IT IS HEREBY ORDERED that:

1) Plaintiff's motion for summary judgment is denied;

2) Plaintiff's motion for remand is granted for further clarification by the ALJ on his reasons for rejecting Plaintiff's subjective pain testimony; and

3) Defendant's motion for summary judgment is denied.

Dated: August 23, 2007

*Patricia V. Trumbull*
_____
PATRICIA V. TRUMBULL
United States Magistrate Judge